**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES D. COFFIN,**

                **Plaintiff,**

    **vs.**                                             **1:16-CV-968**

**TRACY PENTAK,**

                **Defendant.**
_____

**Thomas J. McAvoy,**
**Senior United States District Judge**

## DECISION & ORDER

Before the Court is Defendant Tracy Pentak's motion to dismiss the Plaintiff's Complaint. See dkt. # 30. The parties have briefed the issues and the Court has determined to decide the issue without oral argument.

**I.   BACKGROUND**

On August 3, 2016, plaintiff James D. Coffin filed a complaint pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. See Complaint at ¶ 4, dkt. # 1.[1] Plaintiff claims that he was discriminated against due to his disability. Id. at ¶ 6. Section 55-b of the New York State Civil Service Law allows for persons with disabilities to fill positions

---

[1] The Court will cite to numbered paragraphs where available in the complaint. Subparagraphs are indicated in parentheses. Attachments to the complaint, which do not have numbered paragraphs, are cited by the docket page number.

1

that otherwise would be subject to competitive evaluation.  See N.Y. Civil Serv. Law § 55-b.  Plaintiff is disabled and has had 55-b status since 2002.  Complaint at ¶ 8(1).  Plaintiff works at the New York State Office of Information Technology Services ("ITS") as a clerk.  Id. at ¶ 8(2).  New York began restructuring ITS on November 22, 2012.  Id.  Part of the restructuring included reclassifying jobs based on employee reports, which resulted in the Plaintiff receiving a promotion from a Grade 6 to a Grade 12 position on March 19, 2015.  Id. at ¶ 8(4).  Defendant, who is Plaintiff's manager, implied that the Plaintiff is a burden to tax paying citizens of New York, remarking that his promotion "must have cost tax."  Id.  Plaintiff was not assigned duties commensurate with his new position.  Id. at ¶ 8(4).

Defendant believed inaccurate information may have been in Plaintiff's report and opened an investigation to learn how and why Plaintiff received his reclassification to Grade 12.  Id. at ¶ 9.  As a result of that investigation, the New York State Department of Civil Service ("DCS") rescinded Plaintiff's reclassification.  Id. at 7.  DCS also denied Plaintiff's application for a promotion to Grade 14.  Id. at ¶ 8(5).  Plaintiff alleges that DCS denied this promotion because of his disability.  Id.

Plaintiff filed charges with the New York State Division of Human Rights ("DHR") on December 15, 2015.  Id. at ¶ 10.  DHR found no probable cause that DCS demoted Plaintiff for discriminatory reasons.  Id. at 6.  DHR concluded that DCS did not discriminate against Plaintiff because DCS had actually promoted Plaintiff before rescinding that promotion.  Id. at 7.  Moreover, no evidence existed that proved DCS's actions were influenced by Plaintiff's disability.  Id.  DHR dismissed the case on June 10, 2016.  Id.

Plaintiff names as defendants Tracy Pentak, ITS, and DCS.  Id. at 1.  Plaintiff seeks reinstatement to his Grade 12 position and back pay for time served as a Grade 6 after his

demotion. Id. at ¶ 15. He also seeks an unbiased review of his denied application for Grade 14 status. Id.

On October 31, 2016, ITS and DCS moved to dismiss all claims against them. See dkt. # 16. In a Decision and Order dated December 30, 2016, the Court granted ITS and DCS's motion to dismiss, with prejudice. See dkt. # 23. The Court construed Plaintiff's Title VII claims as brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., since disability claims arise under the ADA, not Title VII of the Civil Rights Act. See id. at 4-5.

The Court issued a text order on January 4, 2017, instructing the Plaintiff to file an affidavit of service or a status report as to the status of the service of summons and complaint on Tracy Pentak, the sole remaining defendant. See dkt. # 24. Plaintiff responded with an affidavit of service on the Defendant by e-mail. See dkt. # 25. On February 17, 2017, the Defendant filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6). See dkt. # 30-1. Plaintiff filed a response to the motion on March 21, 2017. See dkt. # 33. Plaintiff attached an affidavit to his response showing that Defendant had refused service of process at her office on October 13, 2016. See id. at 48.

**II.    LEGAL STANDARDS**

    **A.    Fed. R. Civ. P. 4(e) And 4(m) Requirement Of Service**

A plaintiff is required by Rule 4(m) of the Federal Rules of Civil Procedure to serve the complaint within 90 days of filing. FED. R. CIV. P. 4(m). If the plaintiff fails to serve the Complaint within 90 days, "the court – on motion or on its own after notice to the plaintiff –

must dismiss the action without prejudice against the defendant or order that service be made within a specified time." Id. When "the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Id. To demonstrate good cause, the plaintiff must "'advance some colorable excuse for neglect.'" Meilleur v. Strong, 682 F.3d 56, 61 (2d Cir. 2012) (quoting Zapta v. City of N.Y., 502 F.3d 192, 198 (2d Cir. 2007)). While a showing of good cause requires granting an extension, the Second Circuit Court of Appeals has concluded that "district courts have discretion to grant extensions even in the absence of good cause." Zapta, 502 F.3d at 196.

### B.     12(b)(6) Motion to Dismiss

In addressing a 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept "'all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor.'" Holmes, 568 F.3d at 335 (quoting Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008)). This tenet does not apply to legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility exists where the complaint demonstrates facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.    DISCUSSION

Defendant seeks dismissal on three grounds. The Court will address each in turn.

4

### A.     Personal Jurisdiction Over The Defendant

The Court must first address the jurisdictional issue.  Defendant argues that the Court lacks personal jurisdiction over her because Plaintiff failed properly to serve Defendant within 90 days of filing the complaint.  Plaintiff responds that he e-mailed the Defendant three times and also attaches an affidavit of an attempt to serve the Defendant at her office.  See dkt. # 33 ("Plaintiff's Response"), at 9-10, 48.  He also claims that he properly served ITS.  Id. at 10.  The Court construes Defendant's motion to raise 12(b)(2) and 12(b)(5) defenses.

Rule 4 of the Federal Rules of Civil Procedure "is to be construed liberally 'to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.'"  Romandette v. Weedabix Co., Inc., 807 F.2d 309, 311 (2d Cir. 1986) (quoting Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir. 1972)).  This is especially true where a plaintiff is proceeding *pro se* or *in forma pauperis*.  See Szymaszek v. Mahar, No. 9:06-CV-719, 2008 WL 4518613, at *4-5 (N.D.N.Y. Sept. 29, 2008).  Courts have "a wide range of discretion" on issues of personal service.  Meilleur, 682 F.3d at 62-63.

Plaintiff attaches an affidavit in response that avers Plaintiff attempted to serve the Defendant at her office on October 13, 2016.  See Plaintiff's Response at 48.  The affidavit states that the Defendant refused to accept service and that the guard would not accept the papers on her behalf.  Id.  Plaintiff does not mention whether he asked the guard to accept service on the Defendant's behalf.  Id.  Second Circuit cases have refused to grant 12(b)(2) and (5) motions on similar grounds.  See, e.g., Corrado v. N.Y. Unified Court Sys., 163 F.Supp.3d 1, 15-16 (E.D.N.Y. 2016) (Defendant "cannot evade service [by

5

refusing to accept service], and then complain that he was prejudiced by not receiving service."). Defendant refused service, and the Court cannot agree with her assertion that she was prejudiced because she did not receive service. Prejudice is more than just a delay; it must be a delay that causes loss of evidence, increases difficulties during discovery, or raises the risk of fraud. See Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983). The Defendant has not shown that the delay of service has resulted in prejudice, nor does she attempt to do so. The Court will deny the Defendant's motion on these grounds.

### B. Individual Liability Under The ADA

As the Court has found that jurisdiction exists, the Court will address the substance of Defendant's arguments. Defendant next argues that the ADA does not allow for individual liability. The Plaintiff appears to agree with the Defendant on this point, writing in his response that "[s]ince there are no [compensatory] caps for individuals [in the ADA], however, the intention by Congress was clear–individual employees cannot be liable in discrimination cases." Plaintiff's Response at 11. Moreover, it has long been the position of the Court that the ADA does not permit individual liability. See, e.g., Clark v. Dominque, 798 F.Supp.2d 390, 406 (N.D.N.Y. 2011); Hodges v. Wright, No. 9:10-CV-531, 2011 WL 5554866, at *8 (N.D.N.Y. Sept. 29, 2011); Herzog v. McLane Northeast, Inc., 999 F.Supp. 274, 276 (N.D.N.Y. 1998); McNight v. Dormitory Auth. of State of N.Y., 995 F.Supp. 70, 81 (N.D.N.Y. 1998); Duprey v. Prudential Ins. Co. of Am., 910 F.Supp. 879, 884 (N.D.N.Y. 1996); Romand v. Zimmerman, 881 F.Supp. 806, 811-812 (N.D.N.Y. 1995). Therefore, the Court will grant the Defendant's motion, and in this respect dismiss all ADA claims against her.

6

### C.     Section 1983/NYSHRL

Defendant next argues that § 1983 does not allow for disability discrimination actions because the ADA has its own enforcement structure.  The Defendant also argues that an election-of-remedies provision bars any New York State Human Rights Law ("NYSHRL") actions, since the Plaintiff already sought relief under that law via the DHR.  In response, the Plaintiff relies on the DHR case and the fact that the case mentioned his disability six different times.  DHR found no probable cause that the Plaintiff's demotion was the result of discrimination based on his disability.

"To state a § 1983 claim, a plaintiff must establish that the defendant deprived him of a federal or constitutional right while acting under the color of state law." Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011).  A lawsuit against a defendant in her official capacity is "to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985).  The Plaintiff alleges that Defendant demoted him in her official capacity as an ITS manager.  For example, Plaintiff's complaint names Tracy Pentak as the defendant, further providing information of her official position at ITS.  Plaintiff also says it was "Ms. Pentak who decided in her official capacity as manager to disregard rules, regulations and annual State mandated training." See Plaintiff's Response at 10.  As such, a § 1983 suit against the Defendant in her official capacity is, as a matter of law, a suit against ITS.  See Lore v. City of Syracuse, 670 F.3d 127, 168 (2d Cir. 2012) (discussing Graham, 473 U.S. at 166) (explaining that an official-capacity lawsuit is in reality against the state or municipal entity).

The Eleventh Amendment prevents the Court from reviewing a suit by Plaintiff against New York.  See, e.g., Dean v. Univ. at Buff. Sch. of Med. and Biomedical Sci., 804

F.3d 178, 193 (2d Cir. 2015) ("The Eleventh Amendment bars a damages action in federal court against a state and its officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it."); Marino v. City Univ. of N.Y., 18 F.Supp.3d 320, 335 (E.D.N.Y. 2014) (citing Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990)) ("It is well settled that Congress did not abrogate the States' sovereign immunity by enacting § 1983 and New York has not waived its immunity."). ITS is an arm of New York's state government. ITS has not waived its immunity. Therefore, a suit brought by Plaintiff against the Defendant in her official capacity is barred by the Eleventh Amendment. The motion will be granted with prejudice with respect to this claim. As explained in the Court's previous decision, Plaintiff could not prevail on any such claim due to sovereign immunity.

Plaintiff could attempt to assert a claim under NYSHRL. Such a claim, however, would be barred by the election-of-remedies provision. The election-of-remedies statute says

> [a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any appropriate jurisdiction for damages . . . and such other remedies as may be appropriate . . . unless such person had filed a complaint hereunder or with any local commission on human rights[.]

N.Y. Exec. Law § 297(9). "A claim 'once brought before the [DHR] may not be brought again as a plenary action in another court.'" MacEntee v. IBM, 783 F.Supp.2d 434, 447 (S.D.N.Y. 2011) (quoting York v. Ass'n of Bar of City of N.Y., 286 F.3d 122, 127 (2d Cir. 2002)). There is an exception to this rule if DHR dismisses an action for "administrative convenience rather than . . . for a lack of probable cause." MacEntee, 783 F.Supp.2d at 447; see also Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 883-84 (2d Cir. 1995)

(quoting Emil v. Dewey, 49 N.Y.2d 968, 969 (1980)) ("The single exception to the *mutually exclusive nature of the elective remedies* arises when a complaint is dismissed by the Division for 'administrative convenience.'") (emphasis in original).

Plaintiff filed a complaint with DHR pursuant to NYSHRL. DHR dismissed the case after it found no probable cause of discrimination. Any NYSHRL claims are therefore barred. Plaintiff's *pro se* status does not allow the Court to work around the election-of-remedies statute. See Thorpe v. Piedmont Airlines, Inc., 926 F.Supp.2d 453, 461 (N.D.N.Y. 2013) ("Although Plaintiff commenced this litigation *pro se*, the Court cannot remedy this statutory bar."). The only judicial review of the DHR dismissal Plaintiff can seek is in the "supreme court in the county wherein the unlawful discriminatory practice which is the subject of the order occurs," not the federal district courts. See N.Y. Exec. Law § 298. Therefore, any NYSHRL claims are barred because the Court lacks subject matter jurisdiction and such claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(h)(3). See, e.g., Moodie, 58 F.3d at 882 ("[W]e agree . . . that § 297(9) deprives the district court of subject matter jurisdiction[.]); Burns v. City of Utica, 2 F.Supp.3d 283, 290 (N.D.N.Y. 2014) (Ruling that § 297(9) deprives the federal judiciary of subject matter jurisdiction.).

Because Plaintiff cannot amend the complaint without alleging a futile claim, the Defendant's 12(b)(6) motion to dismiss will be granted.

### V.     CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss is hereby **GRANTED**.

**IT IS SO ORDERED.**

Date:August 23, 2017

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge